Filed 8/4/14  P. v. Rodriguez-Lopez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058162 |
| v. | (Super.Ct.No. FVI1300204) |
| JOSE PEDRO RODRIGUEZ-LOPEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Eric M. Nakata, Judge.  Affirmed with directions.

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Barry Carlton, Deputy Attorney General, for Plaintiff and Respondent.

1

Defendant and appellant Jose Pedro Rodriguez-Lopez appeals after the transfer of his probation from Orange County to San Bernardino County.  Upon the transfer, the San Bernardino County Superior Court added a term to the conditions of defendant's probation, over defendant's objection.  We find no change of circumstances justifying imposition of a new term of probation, and order the new term stricken.

<u>FACTS AND PROCEDURAL HISTORY</u>

In 2011, defendant was charged with three separate driving offenses:  driving under the influence (DUI) of alcohol or drugs (Veh. Code, former § 23152, subd. (a)), driving with a blood alcohol level of 0.08 percent or more (Veh. Code, former § 23152, subd. (b)), and driving with a suspended license (Veh. Code, § 14601.2, subd. (a)).  Defendant ultimately pleaded guilty in Orange County to these three counts, and admitted three prior offenses within the past 10 years.  The DUI offenses were therefore classed as felonies, and defendant himself was designated a habitual traffic offender.  (Veh. Code, § 23550, subd. (a).)  Defendant requested immediate sentencing; the Orange County Superior Court granted probation for 36 months on specified terms and conditions of probation, including a term that defendant serve eight months incarceration in the county jail.[1]

---

[1] The terms and conditions of defendant's Orange County probation were as follows (standard numbered conditions that were not imposed are omitted; defendant's initials next to the relevant provisions are also omitted):

"2.  Imposition of sentence suspended.  Placed on probation for 3 years. . . . Supervised probation . . . .

"5.  Probationers:  Serve 8 mos. in County Jail.  Credit for 13 days actual time served and 6 days good time/work time. . . .

*[footnote continued on next page]*

2

*[footnote continued from previous page]*

"6.  Pay fine of 390 plus penalty assessment.  Commit on fine for 8 [illegible; *sic*] OCJ [Orange County Jail].

"7.  Pay mandatory fee of $70.00 for each count convicted.  [Court Operations—$40.00 P.C. 1465.8 and Facilities—$30.00—G.C. 70373].

"8.  Pay mandatory laboratory analysis fee of $50.00 for each specified drug offense plus penalty assessment [H&S 11372.5 & P.C. 1464].

"9.  Pay mandatory state restitution fine of $200  [Min:  $200; Max:  $10,000—P.C. 1202.4].  If your sentence includes probation, a conditional sentence, mandatory supervision, post-release community supervision or parole, the court will order you to pay a second restitution fine in the same amount, but it will be suspended and you will only have to pay the second fine if you are later found in violation of your probation, conditional sentence, mandatory supervision, post-release community supervision, or parole [P.C. 1202.44 & 45].  All monies paid by defendant for any purpose will first be applied to restitution until it is paid in full [Cal. Constitution].

"12.  Provide a state DNA sample and prints for the State DNA Database pursuant to P.C. 296 and 296.1, if not already provided.

"16.  Submit your person and property, including any residence, premises, container or vehicle under your control, to search and seizure at any time of the day or night by any law enforcement officer, probation officer, or mandatory supervision officer, with or without a warrant, probable cause, or reasonable suspicion.

"17.  Cooperate with your probation or mandatory supervision officer in any plan for psychological, psychiatric, alcohol, and/or drug treatment.  Seek training, schooling, or employment, and maintain residence as approved by your probation or mandatory supervision officer.  Do not associate with persons known to you to be parolees, on post-release community supervision, convicted felons, users or sellers of illegal drugs, or otherwise disapproved of by probation or mandatory supervision.

"19.  Do not own, use, or possess any type of dangerous or deadly weapon, including any firearm or ammunition.

"20.  Obey all orders, rules, regulations, and directives of the Court, Probation Department, Mandatory Supervision, and Jail.

"21.  Violate no law.

"22.  Driver's license or driving privilege is suspended or revoked for a period of 1 year.

"23.  All of the below apply unless lined out:

"a. Do not drive a motor vehicle with a measurable amount of alcohol in your blood.

"b.  Submit to a chemical test of your blood on demand of any peace officer, probation officer, or mandatory supervision officer.

"c.  Do not be present in any establishment where the primary items for sale are alcoholic beverages.

*[footnote continued on next page]*

Defendant was sentenced on October 11, 2011. About one year later, in October 2012, the Orange County Probation Department filed a notice and motion for transfer to San Bernardino County, because defendant had changed his residence. A hearing on the transfer motion was scheduled in the Orange County Superior Court on December 28,

*[footnote continued from previous page]*

"d. Do not consume any alcoholic beverages.

"e. Do not drive a motor vehicle without a valid California Driver's License on your person.

"25. CVC 23593 Advisement: You are hereby advised that being under the influence of alcohol or drugs, or both, impairs your ability to safely operate a motor vehicle. Therefore, it is extremely dangerous to human life to drive while under the influence of alcohol or drugs, or both. If you continue to drive while under the influence of alcohol or drugs, or both, and, as a result of that driving someone is killed, you can be charged with murder.

"26. Disclose your probation or mandatory supervision status and terms upon the request of any peace officer.

"27. Other conditions: [left blank].

"28. Pay cost of probation or mandatory supervision, according to ability to pay, as directed by your probation or mandatory supervision officer.

"29. I understand that the Court ultimately determines the conditions of probation and mandatory supervision, and I have the right to request the Court modify or eliminate any condition imposed by the Probation Department that I believe is unreasonable."

The minutes of the Orange County Superior Court recorded in the register of actions contains slight variations in the probation conditions imposed. For example, the register of actions minutes clarify that defendant was to be "committed for 8 days in lieu of fine on Count 1 [$390.00]. Sentence on fine to run consecutive to sentence of 8 months on Count 1." However, despite differences in language, there was no substantial alteration by the Orange County Superior Court to the terms and conditions of probation as stated on the plea form; defendant later did file one petition for modification of the terms and conditions of probation, when he believed the release date for his service of eight months in the county jail had been miscalculated. The trial court denied defendant's petition.

Of the most significance for our purposes here, however, we note that nothing in the record shows the imposition in Orange County of any term or condition of probation resembling term 31, which was imposed by the San Bernardino County Superior Court after accepting the transfer of defendant's case.

4

2012. The Orange County Superior Court granted the motion, and ordered the case transferred to San Bernardino County.

The San Bernardino County Superior Court accepted jurisdiction on February 1, 2013 (Pen. Code, former § 1203.9), and set a probation modification hearing for February 20, 2013. The San Bernardino County Probation Department prepared a probation report in advance of the hearing. The probation report gave an abbreviated summary of the case, listing the offenses to which defendant had pleaded guilty and for which he was placed on probation in Orange County. Without further analysis, the probation report simply stated, "Appropriate terms and conditions of probation are attached."

The report proceeded to list the fees and fines defendant should be ordered to pay, and then recommended various terms and conditions of probation. The terms imposed in San Bernardino County included some new or differently phrased terms and conditions of probation. Defense counsel objected to the imposition of one particular term, No. 31,[2] which had not been imposed in Orange County. The trial court overruled defendant's objection and denied the request to strike the questioned term.

---

[2] The salient term was numbered 31 in the recommended terms and conditions of probation as prepared by the San Bernardino County Probation Department. In the court's minutes, this term was numbered 33. Because the numbering of the various terms in the probation report was more consistent than the numbering in the court's minutes, and because the discussion on the record used the numbering stated in the probation report, we refer to the objected-to term as condition No. 31.

5

Term No. 31 stated that defendant must: "Not remain in, or reenter, the United States without proper written authorization by the Department of Homeland Security—Bureau of Citizenship and Immigration Services. [¶] Upon reentering the United States, report forthwith to the probation officer with written proof of said authorization." Defense counsel objected to this term: "My client had a question about the fines that were assessed in Orange County that I'm not sure are reflected here. And also term 31, he actually indicates that he has political asylum. I don't know why they would put those terms in." The court inquired, "Does he have a certified letter from the Secretary of State indicating that he has political asylum? That's what he needs to prove it to me, the United States Secretary, not the State of California."

Defense counsel indicated that, "if that was in the original terms, then I will submit. But if it's not, then I don't think that we can impose additional terms."

The court stated, "Sure we can, or he can move back to Orange County." Defense counsel objected, "He's not being sentenced. Probation is just being transferred," to which the court replied, "So?" and followed up with, "He doesn't have to live here. [¶] . . . [¶] He's choosing to do so. He can choose to move back if he doesn't like the way that we do stuff here. That's my position." Defense counsel countered, "Except that the transfer is provided by statute." The court responded again, "Yeah. Does it say that I can't impose anything else? No." Counsel persisted, "Well, but it says the transfer of probation—[¶] . . . [¶]—and the imposition of new probationary terms is restricted by statute." The court replied again, "Where in the transfer statute does it say

6

that?"  Defense counsel explained, "Well, it doesn't say that in the transfer statute, but the statute in probation mentions restriction on imposing new terms."  The trial court insisted that it had the right to adopt the new terms of probation:  "I'm on the probation committee of the superior court here.  I have spent a lot of hours on this.  I know the legislative history was to make it to the benefit of your client.  [¶] . . . [¶]  But each county is different in terms of what they have and what they can do and the things that are available to the probationer, and that's why terms and conditions—and they recognize that in the legislative history, that that would occur.  So your objection is overruled, okay?  If you don't like it, take me up, okay?  That's your alternative.  But this is something that we have dealt with since the inception of 1203.9.  I'm very confident in my position.  [¶]  We're not asking him to pay any more money, not asking him to do any more jail time, all right?  Those are the two things that are no-nos in a transfer, the only two things, okay?  So I don't have a problem with the terms and conditions here."

The court went on to state, "I mean, you do have a point.  There should be an original probation report in here.  I didn't see it.  You're welcome to look in the file before we do this if you want to see if you can find it."  The court then recalled, "Oh.  This is from Orange County.  They don't do probation reports in Orange County."

After a pause, the court proceeded to the hearing.  The court determined that defendant was presently a resident of San Bernardino County.  The court asked if defendant had read and understood the proposed conditions of probation; he indicated that he had.  The court asked if defendant had any questions, and defendant stated that he

did not.  Defense counsel interposed an objection for the record to term No. 31, "both upon the grounds of preemption,"—i.e., that the federal government had jurisdiction over immigration matters to the exclusion of the states—"and also the fact that it may not have been included in his original terms and so it would be a new term imposed."  The trial court noted and denied the objection.

Defendant's attorney filed a notice of appeal.

ANALYSIS

I.  Statutory Background and Standard of Review

Penal Code section 1203.9 provides for the transfer of probation cases from one county to another.[3]  Penal Code sections 1203.1, 1203.2, and 1203.3, governing orders

---

[3]  Penal Code section 1203.9, as applicable to this case, provided:  "(a)  Whenever a person is released on probation or mandatory supervision, the court, upon noticed motion, shall transfer the case to the superior court in any other county in which the person resides permanently, meaning with the stated intention to remain for the duration of probation or mandatory supervision, unless the transferring court determines that the transfer would be inappropriate and states its reasons on the record  Upon notice of the motion for transfer, the court of the proposed receiving county may provide comments for the record regarding the proposed transfer, following procedures set forth in rules of court developed by the Judicial Council for this purpose, pursuant to subdivision (e).  The court and the probation department shall give the matter of investigating those transfers precedence over all actions or proceedings therein, except actions or proceedings to which special precedence is given by law, to the end that all those transfers shall be completed expeditiously.

"(b)  The court of the receiving county shall accept the entire jurisdiction over the case.

"(c)  Notwithstanding subdivision (a), whenever a person is granted probation under Section 1210.1, the sentencing court shall transfer jurisdiction of the entire case, upon a finding by the receiving court of the person's permanent residency in the receiving county, unless there is a determination on the record that the transfer would be inappropriate.

*[footnote continued on next page]*

8

granting probation, revocation of probation upon rearrest, and revocation, modification or change of probation, respectively, provide that the supervising court may modify the terms of probation at any time before the probationary term expires.  However, as the California Supreme Court stated in *People v. Cookson* (1991) 54 Cal.3d 1091, "[a] change in circumstances is required before a court has jurisdiction to extend or otherwise modify probation."  (*Id*. at p. 1095.)  The court went on to explain, "As we held in *In re Clark* (1959) 51 Cal.2d 838 [337 P.2d 67], 'An order modifying the terms of probation *based upon the same facts* as the original order granting probation is in excess of the

---

*[footnote continued from previous page]*

"(d)  The order of transfer shall contain an order committing the probationer or supervised person to the care and custody of the probation officer of the receiving county and, if applicable, an order for reimbursement of reasonable costs for processing the transfer to be paid to the sending county in accordance with Section 1203.1b.  A copy of the orders and any probation reports shall be transmitted to the court and probation officer of the receiving county within two weeks of the finding that the person does permanently reside in or has permanently moved to that county, and thereafter the receiving court shall have entire jurisdiction over the case, with the like power to again request transfer of the case whenever it seems proper.

"(e)  The Judicial Council shall promulgate rules of court for procedures by which the proposed receiving county shall receive notice of the motion for transfer and by which responsive comments may be transmitted to the court of the transferring county. The Judicial Council shall adopt rules providing factors for the court's consideration when determining the appropriateness of a transfer, including, but not limited to, the following:

"(1) Permanency of residence of the offender.

"(2) Local programs available for the offender.

"(3) Restitution orders and victim issues."  (Pen. Code, § 1203.9, as amended by Stats. 2012, ch. 43, § 32, pp. 1998-1999, (SB 1023) eff. Jun. 27, 2012 to Dec. 31, 2013. For the current version of the statute, see Stats. 2013, ch. 13, § 1, pp. 28-29, (AB 492), eff. Jan. 1, 2014.  The 2013 amendment deleted subd. (c), and re-lettered the remaining subds.)

9

jurisdiction of the court, for the reason that there is no factual basis to support it.' (*Id.* at p. 840, italics added.) In this case, the Court of Appeal correctly determined that a change in circumstance could be found in a fact 'not available at the time of the original order . . . .'" In that case, the new fact, "'not available at the time of the original order,'" was the circumstance that "'setting the pay schedule consistent with defendant's ability to pay had resulted in defendant's inability to pay full restitution as contemplated within the original period of probation.'" (*Ibid.*) The court was therefore justified in modifying the terms of probation by extending the probationary term, to give the probationer more time under supervision to pay full restitution.

The issues here are: (1) was San Bernardino County condition No. 31 a change or modification of the original terms of probation; and (2) if so, was there a change of circumstances justifying the modification? A trial court generally has discretion in setting the appropriate terms and conditions of probation, parole, or supervised release: "In general, the courts are given broad discretion in fashioning terms of supervised release, in order to foster the reformation and rehabilitation of the offender, while protecting public safety. [Citations.] Thus, the imposition of a particular condition of probation is subject to review for abuse of that discretion. 'As with any exercise of discretion, the court violates this standard when it imposes a condition of probation that is arbitrary, capricious or exceeds the bounds of reason under the circumstances. [Citation.]' [Citation.]" (*People v. Martinez* (2014) 226 Cal.App.4th 759 [Fourth Dist., Div. Two].)

The modification of the terms of probation requires a change in circumstances; as noted, that change has been described as requiring new facts, not available at the time of the original order. A trial court's determinations of fact are generally reviewed deferentially: "Findings of fact are reviewed under a 'substantial evidence' standard. [Citation.] The standard is deferential: 'When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination . . . .' (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874 [197 Cal.Rptr. 925], original italics.)" (*People v. Superior Court (Jones)* (1998) 18 Cal.4th 667, 681.) The application of a statute to an undisputed set of facts presents a question of law which is subject to de novo review on appeal. (*Rudd v. California Casualty Gen. Ins. Co.* (1990) 219 Cal.App.3d 948, 951-952.) "Questions of fact concern the establishment of historical or physical facts; their resolution is reviewed under the substantial-evidence test. Questions of law relate to the selection of a rule; their resolution is reviewed independently. Mixed questions of law and fact concern the application of the rule to the facts and the consequent determination whether the rule is satisfied. If the pertinent inquiry requires application of experience with human affairs, the question is predominantly factual and its determination is reviewed under the substantial-evidence test. If, by contrast, the inquiry requires a critical consideration, in a factual context, of legal principles and their underlying values, the question is predominantly legal and its

11

determination is reviewed independently.  [Citation.]" (*20th Century Ins. Co. v. Garamendi* (1994) 8 Cal.4th 216, 271.)

Here, the question whether a probation condition like condition No. 31 had been imposed in the original terms and conditions of probation is primarily one of historical fact, but what the record shows with respect to the conditions imposed in Orange County is, in itself, undisputed.

The issue whether there has been a change of circumstances to justify a modification of the terms of probation also depends in part on factual determinations: was there a change in (factual) circumstances, and what was that change?  Such matters are reviewed deferentially, for substantial evidence.  Once factual differences (changes in circumstances) have been found, the differences between one setting and another might justify the imposition of a new term or condition of probation, but the decision to impose a new or modified condition of probation implies an exercise of discretion, akin to the discretion exercised by the court in imposing terms and conditions of probation in the first instance.  That issue is reviewed for abuse of discretion.

II.  No Term or Condition of Probation Like Condition No. 31 Was Originally

Imposed in Orange County

If a term or condition like condition No. 31 had been originally imposed in Orange County, then its imposition in San Bernardino County would not constitute a modification of the conditions of probation; in the absence of a modification of the terms

12

and conditions of probation, no finding of a change of circumstances would be required before imposing the condition.

Supposing that the San Bernardino Superior Court was operating on the theory that condition No. 31 was not a new or modified condition, but as a matter of historical fact had already been imposed in Orange County, we review any such factual findings for substantial evidence.

The record contains two, somewhat different, versions of the terms and conditions of probation imposed on defendant when he agreed to plead guilty in Orange County. One version appears on the face of the change of plea form defendant executed. Another version appears in the minutes of the Orange County Superior Court, provided as a register of actions for the Orange County proceedings in defendant's case. A plain review of the record shows that neither version of the terms and conditions of defendant's Orange County probation contains any express provision remotely like condition No. 31 imposed by the San Bernardino Superior Court. To the extent that we are presented with, presumably, the San Bernardino Superior Court's factual finding that such a condition had expressly already been imposed in Orange County, the court was simply wrong. Not only is such a factual finding not supported by substantial evidence, it is not supported by any evidence whatsoever. A factual finding not supported by substantial evidence (or supported by no evidence) is erroneous. (See, e.g., *People v. Beasley* (2003) 105 Cal.App.4th 1078, 1086 ["Because there was no evidence from which a reasonable jury

could find a traumatic condition resulted from the December rod-beating incident, the evidence is insufficient to support the verdict on count 10"].)

Alternatively, the People argue that condition No. 31 was "not a modification requiring a change in circumstances. In the [original] probation grant, [defendant] agreed to 'violate no law.'" Condition No. 31, the People contend, "simply reinforced that notion of legality by requiring [defendant] not to 'remain in, or reenter the United States,' illegally, without permission of the Bureau of Citizenship and Immigration Services. Doing otherwise would be violating the law and would constitute a violation of probation. The requirement to comply with immigration laws was within the scope of the original order in requiring [defendant] to violate no law."

This contention, as phrased, presents an apparent issue of law, e.g., what is the proper interpretation of the statutory provisions concerning what constitutes a "modification" of the terms and conditions of probation? A mixed question of law and fact is one where the facts are established, and the law is undisputed, but the issue is whether the law as applied to the established facts is violated. (*People v. Cromer* (2001) 24 Cal.4th 889, 894.) We review such mixed questions of law and fact, or issues of law such as the interpretation of statutes and other writings, independently.

We conclude that the People's contention is sophistic, if not disingenuous. Again, probation condition No. 31 required that defendant: "Not remain in, or reenter, the United States without proper written authorization by the Department of Homeland Security—Bureau of Citizenship and Immigration Services. [¶] Upon reentering the

14

United States, report forthwith to the probation officer with written proof of said authorization." The suggestion that condition No. 31 was merely a restatement of federal immigration law, and therefore incorporated by reference within the condition that defendant "violate no law," does not withstand scrutiny.

Title 8 of the United States Code, section 1325(a), defines the circumstances under which entry into the United States is unlawful. "Any alien who

"(1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or

"(2) eludes examination or inspection by immigration officers, or

"(3) attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact, shall, for the first commission of any such offense, be fined under title 18 . . . or imprisoned not more than 6 months, or both, and, for a subsequent commission of any such offense, be fined under title 18, . . . or imprisoned not more than 2 years, or both."

As stated under this provision of federal law, it is not the failure to obtain or possess a particular piece of paper or other writing which renders an alien's immigration status criminally unlawful. Rather, it is the entry at a time or place not designated by immigration officers, avoidance of examination or inspection by immigration officers, or making a false statement to gain entry, which render the alien's immigration status "illegal." It is not without the realm of possibility for an undocumented alien to have entered at a proper time and place, to have undergone inspection and examination, and to

15

have made wholly truthful statements, and yet not have received an immigration document. The command of probation condition No. 31 therefore does not establish that the failure to have a particular immigration document necessarily violates the probation condition that a probationer must "violate no law." As another example, the Congress may from time to time enact amnesty statutes, which provide a pathway for legalization of an alien's status even if the initial entry may have been unlawfully undocumented or uninspected. The existence of amnesty programs negates the inference that the failure to possess a particular immigration document necessarily constitutes a breach of the condition that a probationer must "violate no law." An alien whose status may have been unlawful at one time may nevertheless be in the process of regularizing his or her immigration status. Similarly, the possibility that an alien may have entered the country lawfully, but may have, e.g., overstayed a visa for justifiable or excusable reasons, does not indicate that the failure to have a particular, unexpired immigration document necessarily constitutes a violation of the probation condition to "violate no law."

United States immigration law is a complex and detailed body of statutes, regulations, and interpretive law. There are many rules, and many exceptions to those rules, within the whole of immigration law. The phrasing of probation condition No. 31 does not purport to import the entirety of federal immigration law into defendant's conditions of probation. Rather, it singles out a single set of circumstances—remaining in the United States (or reentry into the United States) "without proper written authorization by the Department of Homeland Security—Bureau of Citizenship and

16

Immigration Services"—as the sole measure of a violation of defendant's probation, without allowing for or considering the possibility that the failure to possess such "proper written authorization" might not be a violation of law.  An alien might not be in violation of federal immigration law, notwithstanding the absence of such a "proper written authorization," in a number of conceivable circumstances, such as inspected but undocumented entry, immigration status being in transition under amnesty provisions, or other adjustments or circumstances under which an alien's immigration status may be in flux.

The People's contention, that condition No. 31 is merely a restatement of the condition that defendant must "violate no law," is further belied by the colloquy that took place at the transfer-in hearing.  When defense counsel objected to condition No. 31, he represented to the court that defendant had been granted political asylum.  The court asked, "Does he have a certified letter from the Secretary of State indicating that he has political asylum?  That's what he needs to prove it to me, the United States Secretary, not the State of California."  The trial court's demand that defendant produce a "certified letter from the [United States] Secretary of State," in order to satisfy the court of defendant's immigration status, was a different and additional requirement from that stated in condition No. 31 itself.  "[P]roper written authorization by the Department of Homeland Security—Bureau of Citizenship and Immigration Services" is *not* the same thing as a "certified letter from the Secretary of State."  The Department of Homeland Security and the Department of State are separate entities.  The trial court's own

17

confusion about the proper means to satisfy condition No. 31 indicates that something in addition to the mere admonition to "violate no law" was being demanded. It is simply not the case that condition No. 31 was a particular instantiation of the general requirement that defendant "violate no law." The particular requirements of condition No. 31 (to not remain in the United States without a particular, yet unspecified, type of document issued by the Department of Homeland Security) do not necessarily describe an actual violation of law so as to also constitute a violation of condition No. 2.

We reject the People's argument that condition No. 31 was "simply a restatement" of the previously imposed condition that defendant "violate no law." The imposition of condition No. 31 was a modification of the existing terms and conditions of probation. Its imposition required a showing of changed circumstances.

III. There Was No Change of Circumstances Justifying a Modification of the Terms and Conditions of Defendant's Probation

Because there was no similar provision in defendant's Orange County terms and conditions of probation, the imposition of condition No. 31 in San Bernardino County constituted a modification of the terms and conditions of probation. The trial court was required to find some change of circumstances to justify such a modification. (*People v. Cookson*, *supra*, 54 Cal.3d 1091, 1095.)

The People argue, first, that defendant's move from Orange County to San Bernardino County was a change of circumstances. The mere transfer of the case does not, however, constitute a change in any material circumstances concerning defendant or

18

his supervision on probation. The trial court observed, properly, that, "each county is different in terms of what they have and what they can do and the things that are available to the probationer, and that's why terms and conditions—and they recognize that in the legislative history, that that would occur." There was no indication, however, that there were any actual differences between Orange County and San Bernardino County in terms of programs or facilities or availability of any resources in defendant's case that would justify a change or modification of the terms of defendant's probation supervision in one county, as opposed to the other. The court pointed to no such differences in making its decision to impose condition No. 31.

The People go on to argue, second, that the transfer of the case to San Bernardino County "prompted the issuance of a probation report," which was the first such report prepared in defendant's case. Defendant had waived the preparation of a probation report at the time of his initial sentencing in Orange County. The People suggest that "The San Bernardino Probation Office was thus the first to look into [defendant's] life in order to gather complete information for a probation recommendation. The investigation apparently revealed that [defendant] was an alien and prompted the San Bernardino probation officer to include Condition 31." The People attempt to justify the inclusion of condition No. 31 on the theory that "A court may modify probation if new information about the defendant comes to light," and that defendant's alien status "may thus have been 'a fact not available at the time of the original order.'"

19

The People's contention is belied by the record. There is no showing that the San Bernardino County Probation Department did any "look[ing] into [defendant's] life in order to gather complete information for a probation recommendation." The probation report is perfunctory, and provides minimal information about defendant's life or circumstances. There is no evidence that the probation officer conducted any particular investigation, and certainly nothing that "revealed" defendant's alienage as a new "fact" that was not available at the time of the original order. The probation report recites a brief description of the offense and the transfer from Orange County. Then the probation report recites the fees and fines to be imposed. Finally, the probation officer "respectfully recommended" the imposition of listed terms and conditions of probation. To all appearances, all the listed terms and conditions are standard terms, with no indication that any particular terms were selected or imposed based on any newly discovered facts or circumstances relating to defendant.

The first express mention, on the record, of defendant's alien status, was after the probation report (including condition No. 31) had already been prepared and submitted to the court for the hearing. That is, the first mention was defense counsel's objection to condition No. 31, at which time he proffered the statement that defendant was a political asylee. Defendant's alien status was not discovered as part of any "investigation" by the San Bernardino County Probation Department, and there was no reference to any such alien status anywhere in the probation report as a justification for ordering probation condition No. 31.

In addition, defendant's alien status was not a new fact or circumstance "not available" at the time of the original order. Defendant was an alien at the time of the original order, and he remained an alien at the time of transfer. That "fact" was fully "available" for consideration at the time of the original order.

As to the People's assertion that "there is no affirmative showing of a lack of change of circumstances," we disagree. The record does affirmatively indicate that there was no change of circumstances, i.e., no new "fact[s] 'not available at the time of the original order,'" upon which to base a modification of the terms and conditions of defendant's probation. (*People v. Cookson*, *supra*, 54 Cal.3d 1091, 1095.)

No substantial evidence supports a finding that probation condition No. 31 was not a modification of the previously imposed conditions of probation in Orange County. First, there was utterly no evidence that any similar condition had already been imposed in Orange County. Second, there was no evidence to support the proposition that probation condition No. 31 was simply a restatement of a previously imposed condition that defendant "violate no law." A finding not supported by substantial evidence cannot be sustained.

In addition, the trial court abused its discretion in imposing the condition in the form of a modification of the original terms of probation. Any such modification was required to be justified by a change of circumstances, to be "found in a fact 'not available at the time of the original order.'" (*People v. Cookson*, *supra*, 54 Cal.3d 1091, 1095.) Defendant's alien status was not a "fact 'not available at the time of the original order.'"

21

(*Ibid*.) Consequently, there was no change of circumstances so as to justify a modification to defendant's terms and conditions of probation. The court abused its discretion in modifying defendant's conditions of probation to include this term.

<u>DISPOSITION</u>

Condition No. 31 of defendant's San Bernardino County Probation Department report, filed February 13, 2013—that he must "Not remain in, or reenter, the United States without proper written authorization by the Department of Homeland Security—Bureau of Citizenship and Immigration Services. [¶] Upon reentering the United States, report forthwith to the probation officer with written proof of said authorization"— is ordered stricken. The judgment is otherwise affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER      
Acting P. J.

We concur:


MILLER      
        J.


CODRINGTON    
        J.